UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| THE SOUTHERN NEW ENGLAND TELEPHONE COMPANY, | : : | |
| Plaintiff, | : | CIVIL ACTION NO. |
| v. | : : | 3:04-cv-2075 (JCH) |
| GLOBAL NAPS, INC., | : | |
| Defendant. | : | OCTOBER 25, 2005 |

**RULING ON DEFENDANTS' MOTION TO DISMISS [DKT. NO. 11]**

The plaintiff, the Southern New England Telephone Company ("SNET"), brings this action against the defendant, Global Naps, Inc. ("Global NAPS"), for damages and injunctive relief arising out of the alleged use of SNET's telephonic networking facilities by Global NAPS. SNET asserts claims for the breach of applicable federal and state tariffs and for breach of an interconnection agreement between the two parties. SNET also asserts claims for the violation of the Connecticut Unfair Trade Practices Act ("CUTPA") against Global NAPS. Global NAPS moves to dismiss SNET's claims pursuant to Fed.R.Civ.P. 12(b)(6), arguing, <u>inter alia</u>, that SNET's suit is barred by the doctrine of primary jurisdiction and that the plaintiff has failed to sufficiently state claims for relief.

I.   **FACTUAL BACKGROUND**

Both parties, in their pleadings, provide substantial explanation of the telecommunications world and the technologies implicated by the dispute in this case. While this information has been helpful to the court, it is not necessary to recount all of it for purposes of ruling on the pending motion. This factual summary will focus on the

1

specific allegations that SNET makes in its complaint. As with all Rule 12(b)(6) motions to dismiss, the court takes the facts alleged in SNET's complaint as true, and draws all inferences in SNET's favor. See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), overruled on other grounds by Davis v. Scherer, 468 U.S. 183 (1984).

SNET is a Connecticut corporation with its principal place of business in New Haven, Connecticut. Global NAPS is a Delaware corporation with its principal place of business in Quincy, Massachusetts. Global NAPS has been a licensed telecommunications carrier in Connecticut since 1999. SNET's claims are predicated on two separate allegations of wrongdoing by Global NAPS: SNET claims that Global NAPS: 1) ordered from SNET, and did not pay for, twenty-six special access circuits, which SNET provided pursuant to a federal tariff; and that 2) Global NAPS "misrouted" long distance network traffic over certain types of connections (i.e., "meet point trunks") in violation of the parties' interconnection agreement.

In support of its set of claims, SNET alleges that between 2002 and 2004, Global NAPS ordered twenty-six special access circuits pursuant to the terms and conditions for special access services that are set forth in SNET Tariff F.C.C. No. 39.[1] SNET further alleges that it provided the special access circuits, billed Global NAPS for the circuits pursuant to the federal tariff, and that Global NAPS has not made a single

---

[1] While SNET references SNET Tariff F.C.C. No. 39 and its interconnection agreement with Global NAPS in its complaint, it did not attach these documents to its complaint or explicitly incorporate them by reference. While, as Global NAPS points out, the court may examine documents that it deems "integral" to a complaint, see Chambers v. Time Warner, 282 F.3d 147, the court does not find it appropriate to do so at this time and accordingly declines to do so here in determining the sufficiency of SNET's claims at this stage of the litigation in connection with a Rule 12(b)(6) motion.

payment to SNET, despite SNET's repeated attempts to collect.

The second set of claims requires more by way of background explanation. In Connecticut, SNET acts as a "incumbent local exchange carrier" ("ILEC"), which is responsible for carrying calls to and from end users (i.e., telephone customers) both within a local exchange and in connection with long distance carriers outside of the local exchange.[2] ILECs such as SNET connect with long distance carriers through "points of presence" ("POPs"). Federal and state tariffs determine the access charges that apply to intraexchange calls, i.e., calls that travel from an ILEC through a POP destined for another local exchange carrier. Under these tariffs, ILECs such as SNET do not charge their end user customers for receiving long distance calls; instead, long distance carriers are required to route long distance calls through certain facilities (i.e., "Feature Group D trunks," according to SNET's arrangement) so that the ILEC receives the information necessary to bill the long distance carrier for the cost of providing terminating access for the calls.

SNET alleges that Global NAPS has participated in a scheme to avoid using the Group D trunks when it has transmitted interexchange (i.e., long distance) traffic to SNET's end users, thus depriving SNET of the ability to gather the information necessary to bill the long distance carriers responsible for the call. SNET claims that instead of using the Group D trunks to deliver long distance calls to SNET's end users, Global NAPS has used "meet point trunks" which, under the interconnection agreement

---

[2] In its pleadings, Global NAPS describes itself as a "competitive local exchange carrier" ("CLEC"). Def's Memo. of Law in Support of Its Mot. to Dismiss, p. 1 [Dkt 12] ("Def's Memo"). However, SNET's complaint does not make any specific allegations about the general nature of Global NAPS's business.

between SNET and Global NAPS, are reserved only for the delivery of interexchange traffic to Global NAPS's own end-users (and which, according to SNET, there are none of in Connecticut), and are not to be used for the delivery of interexchange traffic to SNET end users.  By delivering interexchange traffic to SNET's network through meet point trunks instead of Group D trunks, SNET is unable to properly account for the long distance traffic carried on its network and is thus unable to bill the appropriate long distance carriers.

In its complaint, SNET notes that Global NAPS and the long distance carriers whose traffic it delivers to the SNET network "may or may not" convert the calls to Internet Protocol ("IP") format in transmitting the traffic across networks. Complaint, ¶ 22 [Dkt. No. 1].  SNET also alleges that the "calls that Global NAPS is delivering to SNET for completion to SNET's end-user customers are generally voice calls that both originate and terminate on the public switched telephone network ("PSTN"), but at least in some cases, use Internet Protocol-based transmission in the middle of the call." Id. at ¶ 5.

On the basis of the first set of allegations concerning the special access circuits, SNET asserts claims for the breach of a federal tariff (Count I) and a CUTPA violation (Count V).  SNET seeks money damages for these claims.  On the basis of the second set of allegations concerning the misrouting of long distance traffic, SNET asserts claims for the breach of a  federal tariff (Count II), breach of a state tariff (Count III), breach of the interconnection agreement (Count IV), and a CUTPA violation (Count VI). SNET only seeks injunctive and declaratory relief against Global NAPS for this second

set of claims.

Global NAPS moves to dismiss all of the plaintiff's claims under the doctrine of primary jurisdiction, arguing that resolution of the dispute between the parties involves several complex policy judgments that are appropriately the domain of the Federal Communications Commission ("FCC"). In support of its argument, Global NAPS asserts that the traffic in question is all "IP-enhanced" traffic for which the FCC has not yet determined the applicability of existing tariffs and interconnection agreements. Global NAPS also argues that SNET's special access circuit claims are barred by the mandatory arbitration provision of the interconnection agreement, and that SNET's tariff-based causes of action fail to state claims upon which relief can be granted.

## II.    STANDARD OF REVIEW

A motion to dismiss filed pursuant to Rule 12(b)(6) can be granted only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957). See also Reed v. Town of Branford, 949 F. Supp. 87, 89 (D. Conn. 1996). "In considering a motion to dismiss . . . a district court must limit itself to facts stated in the complaint or in documents attached to the complaint as exhibits or incorporated in the complaint by reference . . . [and review all allegations] in the light most favorable to the non-moving party." Newman & Schwartz v. Asplundh Tree Expert Co., Inc., 102 F.3d 660, 662 (2d Cir. 1996). The undertaking is "not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." Velez v. Levy, 401 F.3d 75, 80 (2d Cir. 2005). Rule 8 of the Federal Rules of Civil Procedure provides that a complaint "shall contain . . . a short and plain statement of the claim

showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); see also Swierkiewicz v. Sorema N.A., 534 U.S. 506, 512 (2002).

### III. Discussion

#### A. Primary Jurisdiction Doctrine

Global NAPS argues that the court should dismiss each of the plaintiff's causes of action under the doctrine of primary jurisdiction. The doctrine of primary jurisdiction "comes into play whenever enforcement of [a] claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body." Johnson v. Nyack Hospital, 964 F.2d 116, 122 (2d Cir. 1992) (quoting United States v. Western Pac. R.R., 352 U.S. 59, 64 (1956)). "[T]he reasons for [the doctrine's] existence and the purposes it serves are twofold: the desire for uniformity and the reliance on administrative expertise." Tassy v. Brunswick Hospital Center, Inc., 296 F.3d 65, 68 (2d Cir. 2002). "Referral of the issue to the administrative agency does not deprive the court of jurisdiction; it has discretion either to retain jurisdiction or, if the parties would not be unfairly disadvantaged, to dismiss the case without prejudice." Rieter v. Cooper, 507 U.S. 258, 268-69 (1993).

In determining whether to apply the doctrine, courts generally look to four factors. These are: (1) whether the question at issue is within the conventional experience of judges or whether it involves technical or policy considerations within the agency's particular field of expertise; (2) whether the question at issue is particularly within the agency's discretion; (3) whether there exists a substantial danger of inconsistent rulings; and (4) whether a prior application to the agency has been made. See Nat'l

Commc'ns Ass'n. v. American Tel. and Tel. Co., 46 F.3d 220, 222-23 (2d Cir. 1995).  In addition, courts must "balance the advantages of applying the doctrine against the potential costs resulting from complications and delay in the administrative proceedings."  Id. at 223.

Global NAPS argues that SNET's claims are barred by the doctrine of primary jurisdiction.  The thrust of Global NAPS argument is that the traffic at issue in SNET's complaint is "Voice over Internet Protocol" ("VOIP") traffic, or IP-enhanced traffic, whose treatment under existing federal tariffs and payment arrangements is currently being considered by the FCC and thus should not appropriately be the subject of litigation before this court.  Global NAPS's argument concerning VOIP traffic and primary jurisdiction generally fails to bar SNET's claims in their entirety because it relies on facts that cannot be adduced from the face of SNET's complaint.  Despite Global NAPS's assertions, SNET does not concede in its complaint that the traffic at issue in its complaint is all VOIP or Internet Protocol (IP) enhanced traffic.  Instead, SNET alleges that the calls being delivered to SNET by Global NAPS are "generally voice calls" that may, in some cases, "use Internet-Protocol-based transmission in the middle of the call."  Complaint, ¶ 5.  The court cannot conclude, on the basis of the well-plead facts in SNET's complaint, that all of the calls at issue in the complaint are VOIP or IP-enhanced calls.  Consequently, to the extent that Global NAPS's primary jurisdiction arguments relies on this factual assertion, they are unpersuasive, and Global NAPS' motion on the basis of primary jurisdiction is denied.[3]

---

[3] Global NAPS argues that both the special access circuit claims and the misrouting claims should be dismissed under the doctrine of primary jurisdiction.  Global

However, as the parties have briefed the issue of the application of primary jurisdiction to the claims in this case that may related to IP-enhanced traffic, and as the complaint acknowledges that "at least some" of the traffic at issue in the misrouting claims involves IP at some point in its transmission, the court will consider the application of primary jurisdiction to whatever class of IP-enhanced traffic that discovery reveals to be at issue in this dispute.  Global NAPS argues that SNET's claims involve a complex, unsettled area of telecommunications law that has yet to be addressed by the FCC, i.e., the treatment of interexchange traffic that involves IP at some point in its transmission, and that SNET's claims cannot be resolved without the court making policy-oriented conclusions about the applicability of existing tariffs to this different kind of traffic.   In support of this position, Global NAPS points to a recent notice of a proposed rulemaking issued by the FCC which indicates the FCC's intention to consider issues relating to VOIP and "IP-enhanced" communications.  See In the Matter of IP-Enabled Services, WC Docket No. 04-36, Notice of Proposed Rulemaking, FCC 04-28, 2004 WL 439260, 19 F.C.C.R. 4863 (F.C.C. March 10, 2004).  In its notice, the FCC seeks comment on the extent to which access charges should apply to VOIP and "IP-enabled" services.  Id. at ¶¶ 61-62.  Global NAPS argues that a determination that it is liable to SNET under existing tariffs and agreements for IP-related traffic would necessarily entail reaching a conclusion about the exact issue that is currently being

---

does not address the primary jurisdiction doctrine in relation to the misrouting claims apart from its assertions about the IP-enhanced nature of the traffic at issue, and thus this holding applies primarily to the application of the primary jurisdiction doctrine to SNET's misrouting claims.  Global NAPS does offer several other arguments in relation to the special access circuit claims that are not related to IP-enhanced traffic, which are considered separately in this decision.

considered by the FCC.

In response, SNET argues that Global NAPS is trying to recast as a complex policy matter what is really a simple matter of contractual breach. SNET argues that its interconnection agreement and tariffs require that Global NAPS use SNET's meet point trunks for only one purpose, and that have used the trunks for a very different purpose, i.e., the transmission of interexchange, "interLATA" traffic. Pl's Brief in Opposition, p. 17 [Dkt. No. 16] ("Pl's Opposition"). As such, according to SNET, their claims do not entail the consideration of complex policy issues, and, furthermore, SNET argues, the consideration by the FCC of how to treat IP-related traffic in the future should not impact their rights to enforce their existing agreement and tariffs.

In further support of its position, SNET points to a recent decision by the FCC concerning traffic that involved, at some point, IP transmission, in which it concluded that interstate access charges could be assessed against the originating carrier. <u>In the Matter of Petition for Declaratory Ruling that AT & T's Phone-To-Phone IP Telephony Services Are Exempt From Access Charges</u>," FCC-04-97, 19 F.C.C.R. 7457, 2004 WL 856557 (April 21, 2004)("AT&T Decision"). In the AT&T Decision, the FCC found that:

> AT&T's specific service, which an end-user customer originates by placing a call using a traditional touch-tone telephone with 1+ dialing, utilizes AT&T's Internet backbone for IP transport, and is converted back from IP format before being terminated at a LEC switch, is a "telecommunications service" to which access charges apply.

<u>Id.</u>, ¶ 24. SNET argues that the AT&T Decision settled the question of whether access charges apply to whatever IP-enhanced interexchange traffic may exist in the present dispute. Global NAPS, however, notes that the AT&T Decision explicitly limited its holding to the type of service at issue in the decision, which was interexchange service

9

that

> (1) uses ordinary customer premises equipment (CPE) with no enhanced functionality; (2) originates and terminates on the public switched telephone network (PSTN); and (3) undergoes no net protocol conversion and provides no enhanced functionality to end users due to the provider's use of IP technology.

Id., ¶ 1.  Global NAPS argues that its service is "structurally" different than the service that was the subject of the AT&T Decision, and argues, essentially, that the determination of whether the service and traffic produced by Global NAPS that is at issue in this case is covered by the AT&T Decision requires the FCC's specialized expertise and is beyond the competency of this court.

In determining the application of the primary jurisdiction doctrine under the Nat'l Commc'ns Ass'n. criteria, the court is guided by two recent opinions in similar cases in which the district courts held that the primary jurisdiction doctrine was applicable to the plaintiffs' claims.  In Southwestern Bell, L.P. v. Vartec Telecom, Inc., No. 4:04-CV-1303, 2005 WL 2033416 (E.D.Mo. August 23, 2005), the plaintiffs, ten local exchange carrier, sought to recover access charges from several entities that were involved in the transmission of interexchange traffic through the use of IP-related transmission.  While one defendant was clearly alleged to be an interexchange carrier ("IXC") like AT&T in the AT&T decision, the other defendants, like Global NAPS in the instant case, were not alleged to be IXCs.  Id. at *3.  The plaintiffs contended that the AT&T Decision imposed liability on all entities involved in providing interexchange service, regardless of whether the entities were themselves IXCs.  Id.  The district court found that the plaintiffs' theory of liability required that it determine whether the defendants in question were in fact IXCs, or whether access charges could be assessed against non-IXCs, and

10

that these questions required technical and policy determinations which were beyond the court's expertise and which were currently before the FCC in the proposed rulemaking discussed above.  Id. at *4.  Accordingly, the district court found that application of the primary jurisdiction argument was appropriate and stayed the plaintiffs' actions.[4][5]

In Frontier Tel. of Rochester, Inc. v. USA Datanet Corp., No. 05-CV-6056(CJS), 2005 WL 2240356 (W.D.N.Y. August 2, 2005), the plaintiff was an incumbent local exchange carrier who brought a claim against a provider of VOIP services for origination access charges.  The district court in Frontier also confronted the applicability of the AT&T decision to the matter before it and found that it did not have the requisite expertise to make the determination of whether the services offered by the defendant were sufficiently similar to the services offered by AT&T so as to render the AT&T decision controlling.  Id.  Accordingly, the district court found that the primary

---

[4] Shortly after issuing its August 23, 2003 ruling, the district court in Southwestern Bell issued an order amending its previous judgment dismissing the plaintiffs' complaint, deciding to stay the matter instead.  Pl's Response to Def's Submission of Supp. Auth., Ex. 1. [Dkt. 34].

[5] SNET argues that the Southwestern Bell decision is distinguishable from the claims in the instant case because the Southwestern Bell plaintiffs sought payment of access charges, and SNET only seeks equitable remedies from Global NAPS and does not contend that Global NAPS is liable for the payment of terminating access charges.  This appears to the court to be a distinction without a difference, as SNET's claims are premised on tariffs that, presumably, are similar to the tariffs that served as the basis of the actions in the AT&T decision and in Southwestern Bell.  The choice of the remedies sought by SNET does not change the fact that this court would have to make similar decisions about the applicability of provisions of the tariffs as were at issue in Southwestern Bell and the AT&T decision.
If anything, SNET's argument would apply with equal force to distinguish the instant case from the AT&T decision, and it would undercut its assertion that the AT&T decision resolves the IP-related issues involved in its asserted claims.

jurisdiction doctrine applied and stayed the action.

It strikes the court that the issues confronted by the district courts in Southwestern Bell and Frontier are substantially similar to the issues presented by the facts in the present case, if the assertion that some of the calls involve IP is credited. To determine that SNET's tariffs and interconnection agreement bind Global NAPS in the ways that SNET alleges that they do, i.e., in the use of the Group D and meet point trunks, the court will have to determine whether there is in fact no difference between the traffic described in the tariffs and the agreement and the traffic at issue. Such a determination will require considering whether Global NAPS' IP-related services are enhanced and whether that has any impact on the applicability of the tariffs and the agreements (as in Frontier), as well as a determination that Global NAPS as an entity is bound by the tariffs in its transmission of IP-related traffic (as in Southwestern Bell). SNET's characterization of these issues as simply involving the application of the interconnection agreement and the tariffs is question-begging as it assumes that the IP-related traffic can be treated exactly the same as non-IP-related traffic. Despite SNET's assertion in its complaint that the "FCC has for decades ruled that temporary protocol conversions such as this have no effect on the regulatory classification of a call or, by extension, the applicability of access charges," the AT&T Decision and Notice of Proposed Rulemaking demonstrate that these issues are very much in flux and currently being considered by the FCC. The court cannot proceed on SNET's theory regarding whatever set of IP-related calls are at issue in this case without making the

determinations described in Frontier and Southwestern Bell.[6]

Accordingly, this court stays, under the doctrine of primary jurisdiction, SNET's misrouting claims to the extent that they assert causes of action regarding traffic that involves IP at some point in its transmission. For the reasons described above, the court does not stay SNET's misrouting claims to the extent that they only involve "traditional" voice calls that do not involve IP.

In addition to the VOIP-related arguments that primarily apply to SNET's misrouting claims, Global NAPS makes separate arguments as to why the primary jurisdiction doctrine should be applied to SNET's special access circuit claims (Counts I and V). Global NAPS argues that SNET's special access circuit claims involve the interpretation of SNET's federal tariff to determine which party should properly bear the costs of building a specific set of "intraLATA" interconnection trunks, and thus such interpretation is properly within the jurisdiction of the FCC. Def's Reply Brief, p. 3 [Dkt. No. 23]. SNET contends instead that the special access circuit claims are "collection action claims" to which the primary jurisdiction doctrine does not apply. Given the allegations contained in SNET's complaint– that Global NAPS actually and specifically ordered twenty six circuits pursuant to the plaintiff's federal tariff– it is unclear to the court at this juncture why SNET's special access claims would require the type of

---

[6] The court also takes note of a recent petition for a declaratory ruling filed by SBC Communication, Inc., on behalf of its affiliated ILECs, including SNET, subsequent to the Southwestern Bell decision, requesting that the FCC clarify the applicability of the AT&T decision to the "IP-in-the-middle" calls that were at issue in Southwestern Bell and may be at issue in this instant case. Def's Submission of Supp. Auth, Ex. B ("SBC Petition for Declaratory Ruling") [Dkt. No. 32]. The FCC has also indicated, in a public notice, its intention to consider the issues raised in SBC's petition. Id. at Ex. C.

policy-minded interpretative analysis that the defendant urges.  See Complaint, ¶ 11.

SNET's claims, at least at this stage of the litigation, appear to involve factual questions

concerning whether Global NAPS actually purchased the circuits that SNET says that it

has, and whether it actually failed to compensate SNET for them.

Furthermore, the Second Circuit has made clear that, under the four criteria

described above, "primary jurisdiction does not apply to cases involving the

enforcement of a tariff, as opposed to a challenge to the reasonableness of a tariff."

National Commc'ns Ass'n., 46 F.3d 220, 223 (2d. Cir. 1994)(citing cases).  As in

National Communication Ass'n, determination of the issues presented by SNET's

special access circuit claims, as alleged in its complaint, involves factual questions that

do not require the FCC's policy expertise or specialized knowledge for resolution.[7]  See

id.  Thus, the court concludes that the primary jurisdiction argument does not bar

SNET's claims regarding the special access circuits (Counts I and V).

### B. Failure to State a Claim for Relief for Special Access Circuit Claims

Global NAPS also argues that SNET's special access circuit claims fail as a

matter of law because SNET's special access circuit claims do not actually involve, as a

factual matter, special access circuits ordered under the SNET federal tariff, but rather

services purchased, or allegedly constructively purchased, under the parties'

---

[7]Global NAPS directs the court to a D.C. Circuit case, Allnet Commc'ns Serv., Inc. v. NECA, 965 F.2d 1118 (D.C. Cir. 1992), for the opposition conclusion, i.e., that tariff enforcement claims are regularly within the primary jurisdiction of administrative agencies.  However, Allnet Communications is inapposite to the instant case as it involved the interpretive construction of a tariff's terms based on policy considerations and not the type of factual issues presented by the allegations of the complaint in this case.

14

interconnection agreement. See Def's Memo, p. 26 and 28. As with its assertions concerning VOIP traffic, Global NAPS's arguments involve factual assertions that cannot be adduced from SNET's complaint. As discussed above, SNET's complaint clearly alleges that Global NAPS <u>ordered</u> special access circuits pursuant to SNET's federal tariff and failed to compensate SNET for them, not simply that Global NAPS was required to do so. Thus, the court denies Global NAPS' motion for failure to sufficiently state a claim for relief.

### C. Failure to State a Claim for Relief for Misrouting Claims

Global NAPS also asserts that SNET's claims for the breach of its federal and state tariffs (Counts II and III), which allege that Global NAPS violated the terms of its federal and state tariffs by routing interexchange traffic over meet-point trunks rather than Group D trunks, fail to state claims for relief. Global NAPS argues that these tariffs only apply to parties who voluntarily purchase services under them, as in a contractual relationship, and that they do not apply to parties who do not avail themselves of them, as if they had the force of law. It further argues that SNET's claims essentially allege that Global NAPS <u>should</u> have ordered service from SNET but did not. As such, it concludes, SNET has failed to state claims for breach of its tariffs. <u>See</u> Def's Memo, p. 37-38.

Global NAPS has mischaracterized the nature of the tariffs and has misread SNET's complaint. Tariffs "are the law, not mere contracts," and they "conclusively and exclusively enumerate the rights and liabilities of the contracting parties." <u>Marcus v. AT&T Corp.</u>, 138 F.3d 46, 56 (2d Cir. 1998)(emphasis omitted); <u>see also</u> <u>Fax Telecommunicaciones Inc. v. AT&T</u>, 138 F.3d 479, 488 (2d Cir. 1998). Thus, Global

15

NAPS' contention that SNET's tariffs do not apply to them unless they are specifically invoked in their purchase of services from SNET or in their use of SNET facilities is inaccurate. Furthermore, SNET does not simply allege that Global NAPS should have ordered service under its tariffs; it alleges that Global NAPS did make use of SNET's facilities in such a way that it tariffs applied to Global NAPS and that Global NAPS failed to perform under the terms of the tariffs. Complaint, ¶¶ 35-44. Thus, SNET has sufficiently asserted claims for the breach of its tariffs.

### D.   Applicability of the Mandatory Arbitration Clause to Special Access Circuit Claims

Global NAPS also contends that SNET is barred from asserting its special access circuit claims as it is bound by a mandatory arbitration clause in its interconnection agreement, and thus "may not pursue" these claims "in this forum." Def's Memo, p. 35. Global NAPS inclusion of its mandatory arbitration claim within its Rule 12(b)(6) motion is inappropriate as it necessarily involves the consideration of facts that are not before the court. The Federal Arbitration Act gives parties the ability to move to compel arbitration pursuant to an arbitration agreement between the parties. 9 U.S.C. § 4. In a Rule 12(b)(6) motion to dismiss, the court treats the facts as alleged in the plaintiff's complaint as true and simply tests the sufficiency of the plaintiff's allegations. See Velez v. Levy, 401 F.3d 75, 80 (2d Cir. 2005). In a motion to compel arbitration brought under 9 U.S.C. § 4, "the court applies a standard similar to that applicable for a motion for summary judgment." Bensadoun v. Jobe-Riat, 316 F.3d 171, 175 (2d Cir. 2003).

The determination that there is a binding arbitration clause between the parties that prevents SNET from bringing the specific claims that it asserts in its complaint requires an examination of facts that are not alleged in SNET's complaint.  Moreover, the existence of an binding arbitration clause does not bear on the sufficiency of the SNET's claims, and thus does not support Global NAPS's Rule 12(b)(6) motion to dismiss.  Accordingly, Global NAPS's motion to dismiss on this basis is denied.  Global NAPS remains free to bring a motion to compel arbitration pursuant to 9 U.S.C. § 4.

**IV. CONCLUSION**

For the forgoing reasons, Global NAPS's motion to dismiss [Dkt. No. 11] is DENIED.  SNET's claims that involve IP-related transmissions are STAYED pending determination by the Federal Communications Commission of the issues raised in the plaintiff's complaint.

**SO ORDERED.**

Dated at Bridgeport, Connecticut this 25th day of October, 2005.

/s/ Janet C. Hall
Janet C. Hall
United States District Judge