UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| THE SOUTHERN NEW ENGLAND TELEPHONE COMPANY, | : : | |
| Plaintiff, | : | CIVIL ACTION NO. |
| v. | : : | 3:04-cv-2075 (JCH) |
| GLOBAL NAPS, INC., et al, | : | |
| Defendants. | : | FEBRUARY 12, 2007 |

**RULING ON PLAINTIFF'S MOTION TO STRIKE OR DISMISS DEFENDANT'S COUNTERCLAIMS [DOC. NO. 249 & 250]**

The plaintiff, Southern New England Telephone Company ("SNET"), has moved pursuant to Rule 12(f) of the Federal Rules of Civil Procedure to strike the five counterclaims asserted by the defendant, Global NAPS, Inc. (Global). In the alternative, SNET has moved to dismiss Global's counterclaims pursuant to Rule 12(b)(6) of the Federal Rules. Global presented these counterclaims in its Answer (Doc. No. 244) to SNET's Amended Complaint (Doc. No. 278). For the following reasons, the court grants SNET's Motion to Strike (Doc. No. 249), without reaching the merits of SNET's Motion to Dismiss (Doc. No. 250).

**I.     BACKGROUND**

SNET filed its initial Complaint (Doc. No. 1) against Global on December 7, 2004. The Complaint's two theories of recovery were that Global had misrouted long distance traffic over certain circuits, which prevented SNET from collecting applicable access charges; and that Global did not pay the tariffed charges it owed to SNET for certain special access circuits Global had ordered. This court stayed SNET's misrouting claims under the doctrine of primary jurisdiction on October 25, 2005.

On June 30, 2006, SNET moved for leave to file *instanter* an Amended Complaint. The Amended Complaint sought to add as defendants certain entities that SNET claims are actually alter egos of Global. Global opposed the Amendment (Doc. No. 207) by arguing, *inter alia*, that the "Proposed Amendment includes **no** new facts supporting **any** of the allegations against Global asserted in the original complaint or **any** new causes of action . . . Thus, the amendment adds nothing to the original claims . . ." Def. Opp. to Motion for Leave to File Amended Compl. at 6 (Doc. No. 207). This court granted SNET's motion on October 3, 2006.

On October 18, 2006, Global filed its Answer and Counterclaims to Plaintiff's Amended Complaint. Global's five counterclaims "seek to recover intercarrier compensation charges that SNET owes Global . . . for traffic that is originated by SNET end users and delivered to Global and bound to Global's Internet Service Provider ("ISP") customers." Def. Counterclaim at ¶ 1. Essentially, Global claims that a change in FCC law with respect to ISP-bound traffic entitles it to collect charges for applicable ISP-bound traffic beginning after October 8, 2004. Def. Response to Motion to Strike at 2.

## II. DISCUSSION

In SNET's motion to strike, it argues that, under Rule 15(a) of the Federal Rules, Global was required to seek leave of this court to add its counterclaims and that this court should exercise its discretion to deny Global leave to amend. Taking the opposite position, Global argues that it was not required to seek leave of this court to add its counterclaims and that, even if it were, this court should grant leave to amend. The

court will address these questions in turn.

### A. Whether Global Was Required to Seek Leave to Amend

Rule 15(a) states, in relevant part, that "[a] party shall plead *in response to* an amended pleading . . . within 10 days after service of the amended pleading." Fed. R. Civ. P. 15(a) (emphasis added). To resolve whether Global was required to seek leave of the court to add its counterclaims, the court must answer the threshold question of what parameters Rule 15(a)'s "in response to" language places on the ability of parties to file responses to an amended complaint. This is a matter that remains unsettled in the Second Circuit. Uniroyal Chem. Co., Inc. v. Syngenta Crop Protection, Inc., 2005 WL 677806 at 1 (D.Conn. March 23, 2005) (citing Pereira v. Cogan, 2002 WL 1822928 (S.D.N.Y. Aug. 7, 2002). As Judge Nevas noted in Uniroyal, courts in this Circuit, particularly courts in the Southern District, have taken three general approaches to this issue. Id. at 2. For the sake of simplicity, this court adopts Judge Nevas' labeling of these approaches as "permissive", "narrow", and "moderate". Id. at 2.

Under the permissive view, which Global urges this court to adopt, a party is entitled to amend its answer once as of right upon the plaintiff's filing of an amended complaint. See American Home Prod. Corp. v. Johnson & Johnson, 111 F.R.D. 448, 453 (S.D.N.Y. 1986) (citing Deutsch v. Health Ins. Plan of Greater N.Y., 573 F.Supp. 1443, 1445 (S.D.N.Y. 1983); see also Veronico v. Pastapunto, 1999 WL 1216951 (S.D.N.Y. Dec. 17, 1999). The philosophy underlying this approach appears to be that plaintiffs "amend[ ] their complaint at their peril, opening themselves up to any and all counterclaims [the defendants] choose to assert." Nolan v. City of Yonkers, 1996 WL

3

120685 at 4 (S.D.N.Y. March 19, 1996). The permissive approach has been justified by reference to the "liberal standard for the amendment of pleadings" under Rule 15(a) and Second Circuit case law. Veronico, 1999 WL 1216951 at 1 (citing Local 802, Associated Musicians of Greater N.Y. v. Parker Meriden Hotel, 145 F.3d 85, 89-90 (2d Cir. 1998).

By contrast, courts that have adopted the narrow approach, which SNET argues is the correct view, generally hold that a party is only entitled to respond as of right to an amended complaint if its answer is strictly confined to the new issues raised by the amended complaint. See, e.g., Wechsler v. Hunt Health Sys., Ltd., 186 F. Supp.2d 402, 415 (S.D.N.Y. 2002) (holding that defendant should have obtained leave of court before submitting an amended answer that asserted "new claims, defenses, and allegations that were not in response to the amended complaint"). This position is centered on the idea that, "defendants [do] not have a right to assert new counterclaims unrelated to the amendment in their answers to the Second Amended Complaint in the same way that they had a right to assert counterclaims in their original answer." Nolan, 1996 WL 120685 at 4 (citing Chrysler Corp. v. Fedders Corp., 540 F. Supp. 706, 712-13 (S.D.N.Y. 1982).

To complete this exercise in triangulation, some courts have adopted the moderate view as a "third way" of approaching the Rule 15(a) dilemma. These courts agree with those taking the narrow view that Rule 15(a)'s "in response" language limits the ability of defendants to assert counterclaims. Moderate courts differ by concluding that this language only limits "the breadth of the changes allowed in an amended response to the breadth of the changes made in the amended complaint." Uniroyal

4

Chem., 2005 WL 677806 at 2. Thus, there is no requirement that a defendant specifically tailor its answer to the amended complaint; rather, moderate courts attempt to discern whether the defendant's answer affects the scope of the litigation in a manner commensurate with the amended complaint. See id. As evidenced by Judge Sweet's opinion in Pereira, the moderate approach is premised on a notion of equity that, "[i]f the plaintiff expands its case by adding new theories or claims, it cannot complain if the defendant seeks to do the same by averring new counterclaims." Pereira, 2002 WL 1822928 at 4.

Of the three approaches discussed above, the court finds the narrow view to be the most appropriate. The court bases this conclusion on its view of the interplay between certain provisions of Rule 13 and Rule 15(a). To start, Rule 13 generally governs the counterclaims and cross claims a party may assert when presented with claims for relief in an opposing party's pleading. In relevant part, Rule 13(a) requires a party to "state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of . . . the subject matter of the opposing party's claim." Fed. R. Civ. P. 13(a) ("Compulsory Counterclaims"). Under Rule 13(b), a party is allowed to "state as a counterclaim any claim against an opposing party not arising out of . . . the subject matter of the opposing party's claim." Fed. R. Civ. P. 13(b) ("Permissive Counterclaims"). Should a party fail to set up a counterclaim, the party must seek leave of court to amend the pleading and assert the counterclaim. Fed. R. Civ. P. 13(f) ("Omitted Counterclaim"). However, this option is only available to a party if there is an acceptable reason for the failure, or if the ends of justice would be served by allowing the amendment. See id. As the court will discuss below, it is

5

noteworthy that whether a counterclaim is compulsory, permissive, or omitted, none of Rule 13's terms require a litigant to assert the counterclaim "in response" to the opposing party's pleading.

When a party is faced with an "amended pleading," rather than just a "pleading," the dictates of Rule 15 come into play. Instead of simply stating the compulsory or permissive claims available to the party at the time it is served with the opposing party's amended pleading - as would be the case if the situation were governed by Rule 13(a) or (b) - Rule 15(a) does obligate a party to plead "in response" to the amended pleading. Fed. R. Civ. P. Rule 15(a). Therefore, it would seem that, as Judge Wood concluded in Nolan, the filing of an amended complaint cannot amount to a blank slate for the opposing party. If it could, the "in response" language of Rule 15(a) would be rendered meaningless. The court thus finds that Global's "permissive" reading of Rule 15(a) is impermissible.[1]

The moderate approach espoused in cases such as Pereira falls by similar logic. That an answer expands the scope of litigation on a scale similar to the amended complaint does not necessarily mean that the answer is "responding for the first time to

---

[1] The decision in Deutsch, upon which Global and the American Home Prods. decision base their view of the permissive approach, is not to the contrary. In that case, the counterclaims that the defendant sought to assert in its amended answer were responsive to the plaintiff's amended complaint. See Deutsch, 573 F.Supp. 1443, 1444-45. Though the court held that "an answer to an amended complaint is not itself an amended complaint," id. at 1445, it went on to state that "[a] defendant filing such an answer is not amending his original answer, he is instead responding for the first time to new issues raised in the plaintiff's amended pleading." Id. at 1445. The court fails to see how the reasoning in Deutsch, which dealt with an amended answer that was in response to the amended complaint, can fairly stand for the proposition that an answer need not be in response to the amended complaint. As Global aptly puts it, the Amended Complaint "adds nothing to the original claims." See Def. Opp. to Motion for Leave at 6 (Doc. No. 207).

new issues raised in the plaintiff's amended pleading." Deutsch, 573 F.Supp. at 1445; see also Oy Tilgmann, AB v. Sport Publishing Int'l, Inc., 110 F.R.D. 68, 70 (E.D. Penn. 1986).  Further, as both parties note in their submissions, no court has provided satisfactory guidance for how a court or the litigants before it are to determine if the breadth of the changes set forth in an answer are comparable to those set forth in the amended complaint.[2]  Not only is the moderate approach without a clear basis in the Federal Rules, it does not appear to lend itself to consistent application.

Thus, the court concludes that the so-called "narrow approach" is the proper means of deciding whether Global was required to seek leave of this court in asserting its new counterclaims.  As Global's counterclaims are admittedly nonresponsive to the new allegations of SNET's Amended Complaint, the court holds that Global was required to seek leave of this court to file its counterclaims.  The court now turns to the question of whether Global should be granted leave to add these counterclaims.

### B. Whether Global Should Be Granted Leave to Amend

The decision whether to grant a motion to amend rests in the sound discretion of the district court.  See Zenith Radio Corp. v. Hazeltine Research, Inc., 401 U.S. 321, 330-31 (1971).  Rule 15(a) permits a court to deny leave to amend "where the motion is made after an inordinate delay, no satisfactory explanation is offered for the delay, and

---

[2]Even if this court ruled that the moderate approach was appropriate, the court is not convinced that Global would be entitled to assert its new counterclaims as of right.  Though all agree that SNET's addition of Global's alleged alter egos changes the scope of this litigation, it is also beyond dispute that SNET's Amended Complaint did not change the scope of this litigation with respect to Global.  With or without SNET's alter ego allegations, the substantive claims against which Global must defend are exactly the same as they where when SNET filed its original Complaint.

the amendment would prejudice" the other party. Grace v. Rosenstock, 228 F.3d 40, 53-54 (2d Cir. 2000) (quotations omitted). "Late amendments to assert new theories are not reviewed favorably when the facts and the theory have been known to the party seeking amendment since the inception of the cause of action." Messier v. Southbury Training Sch., 1999 WL 20901 (D.Conn. Jan. 5, 1999) (Burns, J.) Indeed, the "longer the period of an unexplained delay, the less will be required of the nonmoving party in terms of a showing of prejudice." Block v. First Blood Assocs., 988 F.2d 344, 350 (2d Cir. 1993). Courts arguably have the most discretion to deny leave to amend where leave is sought after the close of discovery or when the nonmoving party has moved for summary judgment. Messier, 1999 WL 20907 at 4 (citing Cresswell v. Sullivan & Cromwell, 922 F.2d 60, 72 (2d Cir. 1990) and Ansam Assocs., Inc. v. Cola Petroleum, Ltd, 760 F.2d 442, 446 (2d Cir. 1985).

 Based on these considerations, the court denies Global leave to amend. The basis for the counterclaims Global seeks to assert arose on October 8, 2004, nearly four months before SNET brought its *original* complaint, and over two years after SNET filed its complaint. The only explanation Global's attorneys provides for this delay is that they were not aware that Global was billing SNET for ISP-Bound traffic when it filed its initial answer. How Global neglected to inform its attorneys that SNET owed it $1.6 million after initially being sued by SNET for nearly $2 million is an issue into which the court will not delve. The more salient point is that Global's excuse does not clarify why it neglected moving to add the omitted counterclaims under Rule 13(f) when it first

8

learned of the oversight,³ rather than laying in wait until SNET was granted leave to amend its Complaint. The court therefore finds Global's explanation for its significantly delayed amendment wholly unsatisfactory.

Turning to the issue of prejudice, the court first notes that discovery in this case was nearly closed when Global sought to add the counterclaims at issue. Shortly after Global filed what the court now considers its Amended Answer, both parties moved for summary judgment. Because the litigation between Global and SNET was at such an advanced stage when Global sought leave to amend, SNET's hurdle for showing prejudice is substantially lowered. The court takes at face value SNET's assertion that it would need additional time to conduct discovery and adjust its trial preparation as a result of Global's new counterclaims. Considering that SNET has undoubtedly relied upon the prior pleadings in this case for quite some time, the court sees little reason why justice requires allowing Global to upset the status quo between it and SNET.⁴

## III. CONCLUSION

For the foregoing reasons, SNET's Motion to Strike (Doc. No. 249) is GRANTED. SNET's Motion to Dismiss (Doc. No. 250) is DENIED as moot.

**SO ORDERED.**

---

³Global's counsel acknowledged that "[w]e became aware [of the basis of the new counterclaims] . . . in I believe May of 2006 . . ." Transcript (1/30/07), p. 41 lines 16-18.

⁴Certainly, as Global suggests, SNET has itself introduced the risk of delaying the adjudication of this trial by naming additional defendants. However, SNET's new alter ego theory arose during the course of discovery and, if true, would further SNET's interest in fully recovering the damages to which it believes it is entitled. Global, on the other hand, has not provided a compelling reason for why this court should risk further delay of this case's resolution by allowing counterclaims that it apparently ignored for over two years.

Dated at Bridgeport, Connecticut this 12th day of February, 2007.

        /s/ Janet C. Hall
Janet C. Hall
United States District Judge