UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| THE SOUTHERN NEW ENGLAND TELEPHONE COMPANY, | : : | |
| Plaintiff, | : | CIVIL ACTION NO. |
| v. | : : | 3:04-cv-2075 (JCH) |
| GLOBAL NAPS, INC. et al, | : | |
| Defendants. | : | February 25, 2008 |

**RULING RE: PLAINTIFF'S MOTION FOR DETERMINATION OF DAMAGES (Doc. No. 417)**

**I.    INTRODUCTION**

The plaintiff, Southern New England Telephone Co. ("SNET"), brings this motion for the determination of damages.  On March 27, 2007, this court granted in part and denied in part SNET's Motion for Partial Summary Judgment as to liability for charges stemming from twenty-one special access DS3 circuits identified in their complaint. See Ruling on SNET's Motion for Partial Summary Judgment ("Ruling on Partial Summary Judgment")(Doc. No. 406).  In that Ruling, the court was unable to rule on the amount of damages because SNET had failed to attach evidence it cited in support of its damages calculation.  See id. at 20 n.4.  The court instructed SNET to file a motion for the determination of damages and subsequently instructed the parties to submit statements under Local Rule 56 pertaining to the amount of damages.  See id.

**II.    STANDARD OF REVIEW**

In a motion for summary judgment, the burden is on the moving party to establish that there are no genuine issues of material fact in dispute and that it is entitled to judgement as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242,

1

256 (1986); White v. ABCO Engineering Corp., 221 F.3d 293, 300 (2d Cir. 2000). Once the moving party has met its burden, the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial," Anderson, 477 U.S. at 255, and present such evidence as would allow a jury to find in his favor in order to defeat the motion. Graham v. Long Island R.R., 230 F.3d 34, 38 (2d Cir. 2000).

In assessing the record, the trial court must resolve all ambiguities and draw all inferences in favor of the party against whom summary judgment is sought. Anderson, 477 U.S. at 255; Graham, 230 F.3d at 38. "This remedy that precludes a trial is properly granted only when no rational finder of fact could find in favor of the non-moving party." Carlton, 202 F.3d at 134. "When reasonable persons, applying the proper legal standards, could differ in their responses to the question" raised on the basis of the evidence presented, the question must be left to the jury. Sologub v. City of New York, 202 F.3d 175, 178 (2d Cir. 2000).

## III.    FACTS[1]

SNET billed defendant Global NAPS, Inc. ("Global") each month for the twenty-one DS3 circuits at issue in this case in accordance with the terms in SNET's Tariff F.C.C. No. 39 ("the Tariff").[2] SNET uses a system called the Carrier Access Billing

---

[1] For the purposes of the instant motion, the court accepts facts undisputed by the parties and supported by evidence as true, and resolves disputed facts in favor of the non-moving party, where there is evidence to support its allegations. The court also assumes familiarity with the factual and procedural background of this case. See Ruling on SNET's Motion for Partial Summary Judgment (Doc. No. 406).

[2] Global disputes the assertion that SNET billed Global under SNET's applicable tariffs. See Def.'s 56(s)(2) Stat. at ¶100. In support of their position, Global cites to a legal argument in their Opposition Brief. See id. Local Rule 56(a)(3) requires that:

System ("CABS") to maintain customer circuit data and charges, and to produce monthly bills for all SNET customers for access services. The CABS automatically generated monthly bills to Global.

As of March 31, 2007, SNET's charges under the Tariff to Global for the twenty-one DS3 circuits ordered between late 2002 and mid-2005 totaled $4,047,376.86 excluding termination and late payment charges. This total is reflected in the monthly bills generated by the CABS and sent to Global each month.

Under the Tariff, carriers purchasing special access circuits can elect Optional Payment Plans ("OPPs") under which SNET bills a lower, guaranteed rate in exchange for a carrier's commitment to purchase the circuits for a minimum term. Under the Tariff, early termination charges are applied to OPPs where "service is disconnected in full or in part prior to the end of the selected commitment period." The Tariff § 2.11.1.1.B, App. P to Motion for Summ. Judg. (Doc. No. 285). Early termination charges are assessed where an OPP is terminated for non-payment.

On November 7, 2007, SNET began disconnecting Global's twenty-one DS3 circuits for non-payment. At the time of the disconnection, ten of those circuits were

> "[e]ach statement of material fact . . . in an opponent's Local Rule 56(a)(2) Statement, must be followed by "a specific citation to (1) the affidavit of a witness competent to testify as to the facts at trial and/or (2) evidence that would be admissible at trial . . . . Counsel . . . are hereby notified that failure to provide specific citations to evidence in the record as required by this Local Rule may result in the Court deeming certain facts that are supported by the evidence admitted in accordance with Rule 56(a)(1) . . . ." Local Rule of Civil Procedure 56(a)(3).

Global's brief is not evidence that would be admissible at trial. Therefore, Local Rule 56(a)(2) denials, such as this one, not supported by evidence as required by the Local Rule are without effect and the 56(a)(1) statement will be deemed admitted by Global. To the extent that Global disputes the legal basis of SNET's positions, those arguments will be address by the court in the discussion section of this Ruling.

under OPPs whose selected commitment periods had not ended. Under the Tariff, there are two options for calculating early termination charges, and SNET is required to "apply the option which produces the lowest termination liability charge to the customer." Tariff at § 2.11.1.1.B. Applying the option which produced the lowest termination liability charge to the ten circuits Global ordered and whose OPPs had not expired, SNET calculated the early termination charges to total $327,709.79.

The Tariff provides for a late payment charge that shall be the lesser of "the highest interest rate (in decimal value) which may be levied by the law for commercial transactions, compounded daily" or ".000590 per day, compounded daily." Tariff at 2.8.2. Applying the .000590 rate, the total late payment charges attributable to the twenty-one DS3 circuits at issue, excluding late payment charges attributable to DS1 and SS7 circuits, equaled $3,092,134.06. In total, SNET claims $7,467,220.71 in damages based on Tariffed DS3 charges, early termination charges, and late payment charges, as of October, 2007.

## IV. DISCUSSION

### A. The Sufficiency of SNET's Evidence

Global opposes SNET's Motion for Determination of Damages on several grounds. First, it argues that the evidence SNET submitted in support of its Motion "is insufficient to demonstrate that Plaintiff accurately calculated its damages in accord with the provisions of the Tariff as applied to the facts of the case." Def.'s Opp. to Pl's Mot. for Det. of Damages. ("Def.'s Opp.") at 12-13 (Doc. No. 456). The court disagrees. Global's bare assertions that SNET has not produced sufficient evidence does not establish an issue of material fact as to the amount of damages under Federal Rule of

4

Civil Procedure 56. Under Rule 56, "an adverse party may not rest upon mere allegations or denials of the adverse party's pleading, but the adverse party's response . . . must set forth specific facts showing that there is a genuine issue for trial." FED.R.CIV.P. 56(e). Here, Global does not contest the factual truth of SNET's calculations, nor offer its own evidence to rebut SNET's calculations, but merely challenges the sufficiency of SNET's documentation. Such an argument does not establish an issue of material fact such that a jury could find in Global's favor. See Graham, 230 F.3d at 38.

B.  The Inclusion of Late Fees for the DS1 Circuit

Global argues that SNET's Motion for Determination of Damages should be denied because SNET "appears" to have improperly calculated the late fees to include those attributable to the DS1 circuit. Def.'s Opp. at 14. Attached to its Reply, SNET provides a supplemental Affidavit explaining that the original calculation did not include late fees attributable to the DS1 circuit and explaining how charges attributable to that circuit were removed from the total late fee charges for all circuits. See Suppl. Decl. of Lauralee Smith, Ex. 3 to Pl.'s Reply in Supp. of Mot. for Det. of Damages (Doc. No. 466). As such, the court finds that there is no disputed issue of material fact as to whether SNET's late fee calculation includes late fees for the DS1 circuit; it does not.

C.  The Credibility of SNET's Affidavits

To support its Motion, SNET provided the Affidavit and a Declaration of Lauralee Smith, the Billing Manager for AT&T. See Att.'s A and B to SNET's Mot. for Det. of Dam. (Doc. No. 417). Global argues that a disputed issue of material fact exists such that a reasonable trier of fact could reject the testimony of Smith based on "various

5

apparent inaccuracies and significant proof gaps in her calculations." Def.'s Opp. at 18. Global identifies two instances that it argues call Smith's credibility into question.

First, Global argues that Smith testified that the late fees were calculated in accordance with the Tariff, but that SNET applied the wrong rate to calculate these fees. See Def.'s Opp. at 19. The appropriate rate to be charged under the Tariff is a disputed issue of law, not fact, between the parties. Global does not allege that Smith miscalculated the late fees given the reading of the law SNET advocates. Therefore, Global's assertion that she has not calculated the late fees in accordance with the Tariff raises an issue of law, but not an issue of fact as to Smith's credibility.

Second, Global argues that a jury could find Smith's testimony incredible because Smith's calculation of the early termination penalties changed between her calculation of December 1, 2006 and the one attached to her affidavit of April 13, 2007. See Def.'s Opp. at 19-20. Global makes much of the fact that Smith explained that the calculation had changed from her earlier "estimate," when she had not initially presented her December 1, 2006 calculation as an "estimate." Id. However, Global does not dispute the veracity of Smith's calculations in December 2006, or those in April 2007 nor does it offer any evidence which would create an issue of material fact as to whether either of those calculations were correct.[3] Instead, Global points to a meaningless semantic distinction, based on which no reasonable trier of fact could conclude that Smith's testimony was not credible.

---

[3]As noted above, Global disputes the legality of the rate of interest Smith used to calculate the late payment fees, but does not dispute that she calculated those fees correctly under the rate that she used.

6

D. Late Payment Fees

Global opposes SNET's inclusion of the late payment fees on two grounds. See Def.'s Opp. at 15-18 and 20-24. First, Global argues that SNET cannot claim late payment fees, or pre-judgment interest,[4] as a matter of right and that the award of such fees is left to the discretion of the court. See Def.'s Opp. at 20-24 (citing Haxtun Telephone Co. v. AT&T Corp. 57 Fed.Appx. 355, 360 (10th Cir. 2003)(holding that the filed rate doctrine does not eliminate a district court's discretion to decide whether to award prejudgment interest). The court disagrees.

The Second Circuit has stated that the "filed rate doctrine (also referred to as the filed tariff doctrine) is the central principle of the regulatory scheme for interstate telecommunications carriers. It forbids a regulated entity to charge rates for its services other than those properly filed with the appropriate federal regulatory authority." Fax Telecomm. v. AT&T, 138 F.3d 479, 488 (2d Cir. 1998). The filed rate doctrine not only limits the rates a regulated entity can charge; it also guarantees that "a carrier is entitled to receive the full tariff rate." Delta Traffic Service, Inc. v. APPCO Paper & Plastics Corp., 931 F.2d 5, 5 (2d Cir. 1991). Here, the tariff specifically provides for a late payment charge of either "the highest interest rate (in decimal value) which may be levied by the law for commercial transactions, compounded daily" or ".000590 per day, compounded daily." Tariff at 2.8.2 (B). Therefore, the court concludes that SNET is entitled to prejudgment interest, in the form of late payment charges as required under the Tariff. See e.g. Cincinnati Bell Tel. Co. v. Allnet Comm. Services, Inc., 17 F.3d 921,

---

[4]The court finds that there is no difference between "late payment fees" and "prejudgment interest" and will use the terms interchangeably.

925 (6th Cir. 1994)(awarding the amount of prejudgment interest specified in the plaintiff's filed tariff); AT&T Comms. of California v. Pac-West Telecomm., 2007 WL 1114037, *2 (N.D. Cal. 2007)(same); WorldCom, Inc. v. Voice Plus Int'l, Inc., 2000 WL 12146, *2-*3 (S.D.N.Y. 2000)(same).

Having concluded that SNET is due late payment charges under the Tariff, the court must then turn to Global's alternative argument regarding the late fees, which is that SNET applied the incorrect interest rate under the Tariff to calculate the fees. See Def.'s Opp. at 15-17. SNET calculated the late payment charges using the .000590 rate, compounded daily, specified in the Tariff. See Pl.'s 56(a)(1) Stat. at ¶ 120. This equates to a rate of 24% per year. See Def.'s Mem. in Opp. at 16. Global argues that the late payment rate should have been calculated instead using the "highest interest rate . . . which may be levied by law for commercial transactions," which it argues is ten per cent a year pursuant to Connecticut General Statute § 37-3a. See Def.'s Opp. at 16. In support of this position, Global cites MCI Worldcom, Inc. v. Tele Tower, Inc., 2002 WL 378424 (S.D.N.Y. 2002). In MCI Worldcom, the court construed a tariff provision almost identical to the one at issue and concluded that the New York usury statute limited the rate of prejudgment interest available to the plaintiffs.[5]

In response to this position, SNET argues that "SNET's federal tariff claims and its entitlement to prejudgment interest are governed by federal law . . ., and Global

---

[5] The cases cited by SNET demonstrate courts applying the late payment rate specified by tariff, but in those cases the tariff appeared only to specify a rate and not to include language limiting the late payment fees to the highest rate allowed by law. See Pl.'s Suppl. Mem. at 3 (citing Cincinnati Bell Tel. Co. v. Allnet Comm. Services, Inc., 17 F.3d 921, 925 (6th Cir. 1994); WorldCom, Inc. v. Voice Plus Int'l, Inc., 2000 WL 12146, *2-*3 (S.D.N.Y. 2000); AT&T Comms. of California v. Pac-West Telecomm., 2007 WL 1114037, *2 (N.D. Cal. 2007)).

8

NAPs has identified nothing in federal law that limits the interest rate that may be levied for commercial transactions." Pl.'s Suppl. Memo. Regarding Late Fees ("Pl.'s Suppl. Mem.") at 3 (Doc. No. 670). SNET's position that the "highest interest rate" provision of the Tariff is governed by federal law is unavailing for two reasons. First, the cases cited by SNET, for the proposition that "federal law controls the issuance of prejudgment interest," address the question of when federal courts can award prejudgment interest on a federal claim absent statutory direction to do so. See Pl.'s Suppl. Mem. at 1 (citing Wickham Contracting Co., Inc. v. Int'l Brotherhood of Electrical Workers, 955 F.2d 831, 833-36 (2d Cir. 1992) and Baruch v. Healthcare Receivable Management, Inc. 2007 WL 3232091 (E.D.N.Y. 2007)). That question is not similar to the question before this court, which is how to interpret the provision of the Tariff providing for prejudgment interest, where the court has concluded that the filed rate doctrine requires an award of prejudgment interest pursuant to the Tariff.

Second, SNET's argument that only federal law can limit the applicable rate under the "highest interest rate" provision would render that provision meaningless because neither party has identified any federal law which would provide such a limit. See Pl.'s Suppl. Mem. at 3 and Def.'s Resp. to SNET's Suppl. Mem. on Late Fees ("Def.'s Suppl. Mem.") at 5. As Global points out, such a reading would be in contradiction of the cannon of statutory and contract interpretation that statutes and contracts should be read to "give effect and meaning to every provision." Gottlieb v. Carnival Corp., 436 F.3d 335, 337 (2d Cir. 2006); see Def.'s Suppl. Mem. at 5.

Given that the "highest interest rate" provision is not limited to federal law, the court looks to relevant state law that may provide a limiting rate. See e.g. Lodges 743

9

and 1746, Intern. Ass'n of Machinists and Aerospace Workers, AFL-CIO v. United Aircraft Corp., 534 F.2d 422, 446 (2d Cir. 1975)("the decision whether to award prejudgment interest is governed by federal law, although it may be proper, as a matter of convenience, to look to state law in order to determine the appropriate rate."); MCI Worldcom, Inc. v. Tele Tower, Inc., 2002 WL 378424 at *1 (S.D.N.Y. 2002)(applying New York usury statute to prejudgment interest clause in telecommunications tariff limiting interest to 18% or "the maximum rate allowed by law"). Connecticut General Statute § 37-3a provides that "interest at the rate of ten per cent a year, and no more, may be recovered . . . as damages for the detention of money after it becomes payable." CONN.GEN.STAT. § 37-3a(a). The court finds that, pursuant to the Tariff's requirement that late payments be accrued at the lesser of "the highest interest rate . . . which may be levied by law for commercial transactions" or .000590 per day, SNET's calculation of late payments must be made at the rate of ten per cent a year, as provided for by Connecticut General Statute § 37-3a.[6]

## IV. CONCLUSION

For the foregoing reasons, SNET's Motion for Determination of Damages is GRANTED in part and DENIED in part. SNET is hereby ordered to recalculate the late payment charges in accordance with this Ruling and submit an affidavit as to the corrected amount of damages within ten days.

---

[6] SNET argues that C.G.S. § 37-3a does not limit the rate of prejudgment interest where the parties have agreed to a higher rate. See Pl.'s Mem. at 10 n.11. This argument ignores the fact that in the "agreement" between SNET and Global, that is the Tariff, the parties agreed to the rate of .000590 or the "highest interest rate . . . which may be levied by law." Tariff at 2.8.2. While SNET may be correct that C.G.S. § 37-3a would not apply had the Tariff only specified the .000590 rate, such is not the case here.

10

**SO ORDERED.**

Dated at Bridgeport, Connecticut this 25th day of February, 2008.

_____      /s/ Janet C. Hall
                                                      Janet C. Hall
                                                     United States District Judge