UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| THE SOUTHERN NEW ENGLAND | : | |
| TELEPHONE COMPANY, | : | |
| Plaintiff, | : | CIVIL ACTION NO. |
| v. | : | 3:04-cv-2075 (JCH) |
| | : | |
| GLOBAL NAPS, INC. et al, | : | |
| Defendants. | : | APRIL 25, 2008 |

**RULING RE: PLAINTIFF'S MOTION FOR FEES AND COSTS OF PROSECUTING MOTION FOR CONTEMPT AND SANCTIONS (Doc. No. 510)**

**I.     INTRODUCTION**

On July 10, 2007, this court granted in part plaintiff Southern New England Telephone Co.'s ("SNET"), Motion for Contempt and Sanctions, and awarded SNET "the reasonable costs of prosecuting the instant motion for contempt and sanctions, including attorney's fees, expert fees, and other costs." Ruling on Motion for Contempt and Sanctions at 13 (Doc. No. 496). Pursuant to the Ruling, SNET submitted the instant Motion for Costs and Fees.

**II.     DISCUSSION**

Defendant Global NAPs, Inc. ("Global") opposes SNET's motion on the grounds that SNET's counsels' charges are unreasonable because (1) their rates are excessive in light of prevailing rates in Connecticut; (2) their billing lacks the requisite specificity; and (3) they relate to claims on which SNET did not prevail. See Def.'s Mem. in Opp. ("Def.'s Mem.") at 7-20 (Doc. No. 532).

In a recent decision, Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany, __ F.3d __, 2008 WL 961313 (2d Cir. 2008), the Second Circuit

1

discussed the two methods courts have used in calculating reasonable fees – the "lodestar" method, which is "based upon 'the hours reasonably spent by counsel . . . multiplied by the reasonable hourly rate,'" Cruz v. Local Union No. 3 of Int'l Broth. of Elec. Workers, 34 F.3d 1148, 1159 (2d Cir. 1994) (citation omitted), and the twelve-factor analysis as developed in Johnson v. Ga. Highway Express, Inc., 488 F.2d 714 (5th Cir. 1974). As the Second Circuit explained, these two methods "considered substantially the same set of variables – just at a different point in the fee-calculation process." Arbor Hill, 2008 WL 961313 at *4. In Hensley v. Eckerhart, 461 U.S. 424, 433 (1983), the Supreme Court "adopted the lodestar method in principle . . . without, however, fully abandoning the Johnson method." Id. at *5. According to the Second Circuit, however, the simultaneous application of these methods "proved to be in tension," and subsequent circuit courts "struggled with the nettlesome interplay between the lodestar method and the Johnson method." Id.

In an attempt to clear up this "confusion," id. at *6, the Arbor Hill court abandons the use of the term "lodestar." Instead, it explains that the better course is:

> for the district court, in exercising its considerable discretion, to bear in mind all of the case-specific variables that we and other courts have identified as relevant to the reasonableness of attorney's fees in setting a reasonable hourly rate. The reasonable hourly rate is the rate a paying client would be willing to pay. In determining what rate a paying client would be willing to pay, the district court should consider, among others, the Johnson factors; it should also bear in mind that a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively.[1] The district court should also consider that such an individual

---

[1]The Second Circuit directs the district court, "in determining what a reasonable, paying client would be willing to pay, [to] consider factors including, but not limited to, the complexity and difficulty of the case, the available and capacity of the client's other counsel (if any), the resources required to prosecute the case effectively (taking account of the resources being

2

might be able to negotiate with his or her attorneys, using their desire to
obtain the reputational benefits that might accrue from being associated
with the case. The district court should then use that hourly rate to
calculate what can be properly termed the "presumptively reasonable fee."

Id. at *7 (emphasis in original).

> A. SNET's Counsel's Hourly Rates are Reasonable

Global argues that SNET's counsel's rates are unreasonable in light of prevailing rates in Connecticut, citing an earlier incarnation of the Arbor Hill decision. See Def.'s Mem. at 7-8 (citing Arbor Hill Concerned Citizens Neighborhood Assoc. v County of Albany, 369 F.3d 91 (2d Cir. 2004))("Arbor Hill I"). The Second Circuit has revised the Arbor Hill decision twice since that time. See Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany, __ F.3d __, 2008 WL 961313 (2d Cir. 2008)("Arbor Hill III"); Arbor Hill Concerned Citizens Neighborhood Assoc. v County of Albany, 493 F.3d 110 (2nd Cir. 2007)("Arbor Hill II"). In the most recently amended Arbor Hill decision, the Second Circuit clarified that "a district court may use an out-of-district hourly rate - or some rate in between the out-of-district rate sought and the rates charged by local attorneys - in calculating the presumptively reasonable fee if it is clear that a reasonable, paying client would have paid those higher rates." Arbor Hill, 2008 WL 961313 at *8. The presumption that a reasonable, paying client would hire counsel at local rates may be rebutted "in the unusual case" where "the party wishing the district

---

marshaled on the other side but not endorsing scorched earth tactics), the timing demands of the case, whether the attorney had an interest (independent of that of his client) in achieving the ends of the litigation or initiated the representation himself, whether the attorney was initially acting pro bono (such that a client might be aware that the attorney expected low or non-existent remuneration), and other returns (such as reputation, etc.) the attorney expected from the representation." Id. at *7. The court notes that these factors largely overlap with the twelve Johnson factors. See id. at *4 n.3.

3

court to use a higher rate demonstrates that his or her retention of an out-of-district attorney was reasonable under the circumstances." Id.

The court finds that SNET has shown that retention of Mayer Brown at the rates prevailing in Chicago (subject to a 15% discount), rather than the rates prevailing in Connecticut, was reasonable given the circumstances of this case. This case involves complex legal issues of federal telecommunications law, issues which a paying client might reasonably assume are not within the expertise of Connecticut law firms. Furthermore, and more importantly, as SNET points out, affiliates of SNET are litigating similar issues against Global in California, Illinois and Ohio, further justifying the choice to hire a single, national law firm. See SNET's Reply at 7.

It is clear to the court that in this case, where the parties are litigating complex legal issues in several forums simultaneously, a reasonable, paying client would be willing to pay out-of-district rates. In fact, Global's argument that paying out-of-district rates in this case is unreasonable is belied by their own choice to be represented by the New York firm Kelley Drye and Warren, with lead counsel from Washington, D.C.[2] See Pl.'s Reply at 7-8 (Doc. No. 543). Therefore, the court finds that this case presents unusually complex legal issues, which, in light of the national scope of this litigation, make SNET's choice to pay out-of-district rates reasonable.[3]

---

[2]The court notes that, at the time of this opinion, Kelley Drye and Warren has withdrawn as counsel to Global. However, the court finds that Global's choice to hire an out-of-district firm, retain it for nearly four years, and object to its withdrawal, is still relevant to the question of whether this case is so unusually complex as to justify out-of-district rates.

[3]Global's argument that SNET's counsels' fees were unreasonably high pertained only to Mayer Brown's out-of-state rates and not any particular rate that was changed. Therefore, absent any such particular objection, and based on the court's knowledge of both in- and out-of-state rates, the court finds the particular rates billed by Mayer Brown reasonable.

4

B. SNET's Counsel's Billing is Sufficiently Detailed

Generally, counsel seeking fees are "not required to record in great detail how each minute of their time was expended." Rabin v. Wilson-Coker, 425 F.Supp.2d 269, 272 (D.Conn. 2006) (quoting Hensley v. Eckerhart, 461 U.S. 424, 437 n.12 (1983)). However, they are obliged to "keep and present records from which the court may determine the nature of the work done, and the need for and the amount of time reasonably required; where adequate contemporaneous records have not been kept, the court should not award the full amount requested." Id. (quoting F.H. Krear & Co. v. Ninteen Named Trustees, 810 F.2d 1250, 1265 (2d Cir. 1987)).

Global argues that SNET's law firms' use of "block billing" does not provide the level of specificity required to allow the court to determine the nature of the work done by SNET's counsel. See Global's Mem. at 10-12. It also argues that SNET's counsel's entries are impermissibly "vague." Id. at 12-3. The court disagrees. In reviewing SNET's counsel's records, the court was satisfied that it was generally able to determine the nature of the work done by SNET's counsel in prosecuting the Motion. See Putnam Leasing Co. v. Fields, 2007 U.S. Dist. LEXIS 58794, *7 (E.D.N.Y. 2007)(finding block billing records do not "significantly impede the court's assessment of the reasonableness of the hours spent on the litigation."). Therefore, the court finds that SNET's law firms' bills were specific enough to support SNET's fee request.[4]

---

[4] It does not escape the court's attention that while arguing that SNET's counsels' "block billing" is "plainly impermissible," Global's own counsel also documented fees using "block billing." Def.'s Mem. at 10; see Letter from J. Melick to E.D.N.Y., Ex. C, Pl.'s Reply. Global eventually complained about its own firm's block billing practices, albeit at least a year and a half after such billing practices began.

5

C. SNET's Counsel's Bills Relate to SNET's Motion

Global argues that SNET "cannot be awarded attorneys' fees and costs relating to *all* of the claims it pursued in its Motion when it did not succeed on most and, in some cases, voluntarily abandoned them." Def.'s Mem. at 13. In Hensley, the Supreme Court established a framework for determining when a party's partial success would require a reduction in fees. See Grant, 973 F.2d at 101(internal quotation omitted). At step one, "the district court examines whether the plaintiff failed to succeed on any claims wholly unrelated to the claims on which the plaintiff succeeded." Id. (internal citation omitted). At step two, the court "determines whether there are any unsuccessful claims interrelated with the successful claims. If such unsuccessful claims exist, the court must determine whether the plaintiff's level of success warrants a reduction in the fee award." Id. (internal citation omitted). If a plaintiff has "obtained excellent results . . . the attorneys should be fully compensated." Id. (internal citation omitted).

Global argues that SNET cannot claim fees for discovery pursued in Canada concerning the "Net Tel" Corporation because this discovery was not introduced to support its Motion for Contempt and Sanctions. See Def.'s Mem. at 15. However, the "Canadian discovery" was pursued in response to a defense asserted by Global. See Pl.'s Mem. at 5. As such, the Canadian discovery was "interrelated" to SNET's successful Motion for Contempt and Sanctions. The court finds that SNET achieved a high degree of success on that Motion; the court held Global in civil contempt and found that "Global had acted willfully in violating this court's orders." Ruling at 12-3. Given that SNET's Canadian discovery was related to Global's defense to the Motion for

Contempt and Sanctions, and that SNET achieved a high degree of success on that Motion, the court finds that fees incurred in pursuing that discovery are reasonably included in SNET's fee request.

SNET's counsel's fees for opposing a Motion to Quash on two subpoenas they served on Cisco Systems, Inc. are also reasonably included in SNET's fees. Global argues that fees relating to these subpoenas should be disallowed because they were "invalid" and "ultimately withdrawn." Def.'s Mem. in Opp. at 16. Global points to no authority for the proposition that SNET's counsel should not be compensated for missteps that were reasonably undertaken to prosecute their motion, and the court is aware of none. Global does not argue that the subpoenas were unrelated to SNET's Motion for Contempt and Sanctions. Therefore, finding that these subpoenas were related to SNET's Motion, and that SNET achieved a high degree of success on the Motion, the court concludes that the time spent preparing and defending these subpoenas is properly included in SNET's fee calculation.

SNET's counsel's time spent in preparation for a hearing on the Motion that was ultimately rescheduled, and time spent by Advanced Network Solutions ("ANS"), SNET's witness, is properly included in their Motion. While Global is correct that ANS's invoices do include fees for "installation," the court notes that ANS is not a law firm, and thus the court will not review these invoices for the same level of specificity it would look for in a law firm's bill. Instead, the court credits the declaration of Attorney Timothy Jensen, who asserts that SNET's fee calculation includes only work ANS billed "in prosecuting SNET's motion for contempt and sanctions." Decl. of Timothy Jensen at ¶7 (Doc. No. 511). Global's assertion that SNET's counsel should not be compensated for

7

preparing for the same hearing twice is unavailing; hearings in this case are frequently rescheduled, and it is obvious that responsible attorneys may need to review before a rescheduled hearing. Therefore, the court finds that SNET's counsels' fees for preparation for both hearing dates are reasonably included in their bill.

      D.      The Resources Required to Prosecute the Case

Finally, the court considers SNET's counsel's fees reasonable in light of the "resources required to prosecute the case effectively (taking account of the resources being marshaled on the other side but not endorsing scorched earth tactics.)" Arbol Hill III, 2008 WL 961313 at *7. While $645,760.41 for prosecuting a Motion for Contempt and Sanctions would seem excessive in an average case, the court recognizes that the difficulty, contentiousness, and length of this case have been anything but average. Global's counsel vigorously litigated every aspect of this Motion, justifying SNET's counsels diligence in prosecuting it.

## III.    CONCLUSION

For the forgoing reasons, the court finds that the rates charged by SNET's counsel are reasonable, and that the hours billed were related to prosecuting SNET's highly successful Motion for Contempt and Sanctions. As such, the court determines that SNET's fee calculation of $645,760.41 is the presumptively reasonable fee. Therefore, the court orders an award for fees and costs to SNET for $645,760.41.

**SO ORDERED.**

Dated at Bridgeport, Connecticut this 25th day of April, 2008.

                                        /s/ Janet C. Hall
                                        Janet C. Hall
                                        United States District Judge